UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION
CRIMINAL NO. 05-08-DCR

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.                                    **REPORT AND RECOMMENDATION**

REX MUSIC and
WALTER CURTIS                                                              DEFENDANTS

* * * * * * *

        This matter is pending upon a "Motion to Suppress" filed by defendant Rex Music,
hereinafter "Music" (DE #32), and a motion to join in Music's motion to suppress filed by
defendant Walter Curtis, hereinafter "Curtis". The Government has filed a written response (DE
#37). A suppression hearing was held on June 16, 2005 at which both defendants were
personally present and at which all parties were represented by counsel. Having fully considered
the entire record, including the motions and memoranda filed by counsel, the hearing testimony,
and exhibits, the Magistrate Judge makes the following proposed Findings of Fact and
Conclusions of Law:

**I. Proposed Findings of Fact**

        1. In the weeks and months prior to the stop of the vehicle in question, the Kentucky
State Police (KSP) and the Drug Enforcement Administration (DEA) were involved in a
narcotics investigation in Pike County, Kentucky.
        2. During the course of this investigation it was determined that the home of Richie
Bentley, hereinafter "Bentley," was being used to store large amounts of marijuana and that
Music was a potential customer of Bentley. The investigation also determined that one of the
ways that this marijuana was stored was in vacuum-sealed metallic cans, which method of
storing marijuana was apparently unique to this geographic area.
        3. On May 11, 2004 KSP Det. Randy Hunter received a call from a confidential source
(CS) stating that Music's van, occupied by Music and an unknown male, was at Bentley's
residence and that marijuana was possibly being loaded into the van. The CS also informed Det.
Hunter that Music had been present at Bentley's residence two weeks prior to May 11, 2004.
Det. Hunter later received two other calls from the CS, the first stating that Music was still at
Bentley's residence, and the second stating that Music had left the residence and was heading
north on U.S. 23 toward Pikeville.
        4. Det. Hunter came into contact with the van on U.S. 23 just south of the Pikeville city
limits. At this time Det. Hunter noticed that the van's license plate was loose and was not
illuminated. However, Det. Hunter did not stop the vehicle at this time because of safety
concerns.
        5. KSP Sgt. "Les" Stapleton later joined Det. Hunter in pursuit of the van. At this time
Sgt. Stapleton noticed that the license plate was not illuminated, was turned, and was loose.

However, a stop was still not initiated because Det. Hunter was in an unmarked unit and because of safety concerns Sgt. Stapleton wanted another marked unit present at the time of the stop.

6. KSP Trooper Rick Conn joined in the pursuit in the Green Meadows area of Pike County. At that time Trooper Conn noticed that the spare tire cover, which holds the license plate, was loose and that the plate was not illuminated. At this time Trooper Conn initiated a stop of the vehicle at Harold, just across the county line in Floyd County.

7. Upon making the stop Music was identified as being the driver of the van and Curtis was identified as the passenger. When Trooper Conn approached the vehicle, he informed Music that the spare tire cover was loose. Music then demonstrated to Trooper Conn that the cover would not fall off. At this point Trooper Conn went back to his cruiser and ran Music's license and registration. Upon returning from his vehicle, Trooper Conn asked Music if he had any illegal items inside the vehicle. Music stated that there were no illegal items in the vehicle. Trooper Conn then asked Music for consent to search the vehicle. Music agreed at which point Trooper Conn provided a consent to search form, which was read to Music and which both Music and Trooper Conn signed.

8. During the Search, a KSP K-9 handler, Trooper Bradley Cure arrived. Trooper Cure's drug detection dog conducted both an exterior and interior search of the van. During this search the dog alerted to two locations within the van. One of these locations was an area of molding behind the driver's seat and the other was the rear floor of the van.

9. Upon searching these locations, nine metal cans were discovered under the rear floor area of the van. These cans were consistent with the metal cans used to store marijuana.

10. Once these were found Music informed the officers that the cans contained potpourri. Sgt. Stapleton then punctured the top of one of the vacuum-sealed cans in the presence of Music, and the can was found to contain marijuana. Music did not specifically consent to the search of the cans. However, at no time during the search of the vehicle or cans did Music withdraw or attempt to withdraw his consent to the search.

## II. Issues Presented

The defendants argue that Trooper Conn "did not have probable cause to pull over Music's vehicle." Also, the defendants argue that even if the Court determines that there was probable cause for the stop, Music was detained, "without reasonable suspicion" of criminal activity, beyond the purpose of the stop. Finally, the defendants argue that even if the Court finds that Music was not detained beyond the purpose of the stop, "Music did not consent to the search of the cans."

The United States contends that the traffic stop was justified because there was probable cause for the traffic stop due to the vehicle's license plate not being illuminated, which is a traffic violation, and because the officers had a reasonable suspicion of criminal activity based upon the information received from the CS prior to the traffic stop. The United States also asserts that the search does not violate the fourth amendment because of the automobile exception to the warrant requirement and because Music knowingly and voluntarily gave the officers consent to search the van.

## III. Conclusions of Law

**Fourth Amendment**

The Fourth Amendment to the United States Constitution guarantees a person's right to be free from unreasonable searches and seizures. Specifically, it states:

> "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."

Generally, warrantless searches are considered unreasonable under the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Roark, 36 F.3d 14 (6th Cir. 1994). Therefore, when a warrantless search is conducted, the burden of proof is upon the United States to justify the search. United States v. Haynes, 301 F.3d 669 (6th Cir. 2002). The United States must justify a warrantless search through one of the judicially recognized exceptions to the warrant requirement.

**Initial Stop of the Vehicle**

Police officers may make a brief investigatory stop of a vehicle if they have a "reasonable suspicion to believe criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); See also, Houston v. Clark County, 174 F.3d 809 (6th Cir. 1999). In the present case, the ongoing investigation being conducted by the KSP and DEA, which indicated Music as a potential purchaser of illegal drugs, coupled with the information supplied by the CS gave the officers "reasonable suspicion" to believe that criminal activity was ongoing. Therefore, the officers' stop of the vehicle is justified under the Arvizu standard.

Also, officers may conduct a traffic stop of a vehicle if they have probable cause to believe a traffic violation has occurred. This is regardless of the officer's subjective reasons for making the stop. Wren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). See also United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993). In the present situation, the officers had probable cause to stop the vehicle because all three officers who followed the vehicle prior to the initiating the stop noticed that the van's license plate was not illuminated, was loose, and had turned sideways. Also, these conditions were visible on the video of the stop. The fact that the plate was not illuminated is a violation of KRS 186.170 which states ". . . the rear plate shall be illuminated when being operated during the hours designated in KRS 189.030." KRS 189.030 provides that "lights, when required, on a vehicle, shall be illuminated during the period one-half (1/2) hour after sunset . . ." Clearly, as shown by the video of the stop and testimony of the officers, this stop was made well beyond one-half hour after sunset. Therefore, the officers had probable cause to stop the van because its rear plate was not illuminated, in violation of KRS 186.170.

**Detention**

The defendants argue that they were detained beyond the purpose of the traffic stop, and therefore the search of the vehicle is unlawful. However, the defendants were not detained beyond the purpose of the stop. In Burton, the officer asked the driver whether he owned the automobile, whether there was anything illegal inside, and if he would consent to a search of the vehicle. United States v. Burton, 334 F.3d 514, 515-16 (6th Cir. 2003).When presented with this issue the Court of Appeals for the Sixth Circuit held that "asking a few questions about illegal activity to the driver of an automobile stopped for a traffic violation at 11:30 p.m. is not unreasonable." Id. at 519.In this case, Trooper Conn showed Music his concern about the spare tire cover, and then went to his police cruiser to check Music's license and registration. Upon returning he asked Music if there was anything illegal in the vehicle, when Music said no Trooper Conn asked Music for consent to search, which was granted. Therefore, when the consent to search was granted the purpose of the stop had not ended and as in Burton, the question about illegal items and the request to for consent to search were not unreasonable under the Fourth Amendment.

Also, the officers could have extended the stop, if necessary, beyond its purpose because they had a reasonable suspicion that criminal activity was afoot. In Hill, the Court of appeals for the Sixth Circuit held that "an officer may detain an individual after a routine traffic stop is completed if the officer has a reasonable suspicion that the individual is engaged in criminal activity." United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999). In this case, the ongoing investigation which had revealed Music as a potential purchaser of illegal drugs, the tip of the CS that Music was at a home, which was a suspected drug storage facility, and the nervousness of the passenger, Curtis, was enough to give the officers reasonable suspicion that the individuals in the van were engaged in criminal activity. Therefore, the officers would have been justified in extending the stop beyond its original purpose.

**Automobile Exception to the Warrant Requirement**

"There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken; one is the . . . automobile exception." California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The reason for the automobile exception is twofold. First, the automobile exception allows searches to be executed without a warrant because a vehicle, unlike a structure, can be quickly moved. Id., See also Wyoming v. Houghton, 526 U.S. 295, 304, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Second, the warrantless searches of automobiles are allowed because "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." South Dakota v. Opperman, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In order to conduct a warrantless search under the automobile exception there must be probable cause to search a vehicle. United States v. Pasquarille, 20 F.3d 682, 690 (6th Cir.), cert. denied, 513 U.S 986 (1994). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). The existence of probable cause is determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In the present case, the officers had "probable cause" to search the vehicle. In determining this we must look at the ongoing investigation, the tip given to the officers by the

CS, the nervousness of the passenger, and all other circumstances surrounding the stop and search. These factors gave the officers probable cause to search the vehicle. With "probable cause" to search a vehicle, officers may also search containers within that vehicle. Wyoming v. Houghton, 526 U.S. at 301, citing California v. Acevedo, 500 U.S. 565, 572, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). In the present case, since the officers had probable cause to search the vehicle they were also allowed to search the cans within the vehicle. Therefore, the warrantless search of neither the vehicle nor the cans violates the fourth amendment. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (Search extends to entire passenger compartment and all containers open or closed found there), and United States v. Garrido-Santana, 360 F.3d 565 (6th Cir. 2004) (Consent to search vehicle authorizes a search of gas tank without separate permission to search the gas tank).

**Consent Exception to the Warrant Requirement**

The Fourth Amendment prohibition against warrantless searches does not apply to situations in which the defendant voluntarily consents to the search. Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). However, the consent to search must be voluntarily given. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Also, it is the government's burden to prove, by a preponderance of the evidence, that the defendant voluntarily consented. United States v. Haynes, 301 F.3d 669 (6th Cir. 2002). In determining whether the consent was voluntary the Court must look at the "totality of the circumstances." United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), See also Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police. United States v. Riascos-Suarez, 73 F.3d 616, 625 (6th Cir. 1996), See also United States v. Crowder, 62 F.3d 782, 787 (6th Cir. 1995).

In the present case, the defendant is an adult of ordinary intelligence. The stop was conducted in an ordinary, business-like, manner. When Trooper Conn finished running Music's license and registration, he asked Music if there was anything illegal inside the van and if Music would consent to a search of the van. Music then gave oral consent to the search and also signed a consent form before the search began. He was read the consent form by Trooper Conn, which he also signed. He asked no questions about the form when it was read to him. During this process he was not told that he could not leave nor was coerced in any way by the officers. Considering the circumstances as a whole, the consent form was understood and voluntarily entered into by Music. Therefore, the consent is valid and the Fourth Amend prohibition against warrantless searches does not apply to this situation.

The defendant argues that, even if he did consent to the search of the vehicle, he did not consent to the search of the cans. "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Florida v. Jimeno, 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 247 (1991).

Therefore, consent is not required for each container searched in a vehicle, so long as it is reasonable to believe that the consent to search extends to that particular container.

      In the present case, it is reasonable to believe the Music consented to the search of the cans. This is because this container is not the type of container that would be unreasonable for an officer to believe Music consented to them opening when he consented to a search of the vehicle. Also, it was reasonable for the officers to believe that Music consented because the container was opened in Music's presence and Music never told the officers not to open the cans nor did he attempt to withdraw his consent to the search at any point during the search. Therefore, the officers could search the cans as it was reasonable to believe that Music consented to the search of the cans.

## **RECOMMENDATION**

      It is recommended that the defendants' motion to suppress be **DENIED**.

      Particularized objects to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

      This the 20th day of June, 2005.

Signed By:

*J.B. Johnson, Jr.*

United States Magistrate Judge